Drake, Ch. J.,
delivered the ojúnion of the court:
The claimants sue for the proceeds of sixty-five bales of cotton, captured by Union forces in Marshall CouDty, Alabama, *404 in the year 18G4. Their title thereto is made out, and the only-obstacle to their recovery grows out of the following facts:
The claimants are subjects of the Queen of Great Britain, and, at the breaking out of the rebellion, were residents of the State of Georgia, and they continued to reside within the bounds of the rebel confederacy during the whole period of the war.
From having, in 1860 anil 1861, been in business as railroad contractors, they, in December, 1861, began the manufacture of saltpetre at Santa Cave, in Jackson County, Alabama, and continued engaged therein until the following April, when, owing to the presence of the United States troops in the vicinity, they left the cave, and remained absent therefrom until the following October; -when, immediately after the evacuation of Huntsville, Alabama, by the United States forces, they resumed work in making saltpetre at said cave, and continued it about two months. Their right to make saltpetre there was under a contract of lease between the owners of the cave and other parties, which had been transferred to the claimants, by whom it was, in May, 1863, sold and transferred to the so-called “ Confederate States of America” for $34,600. On the 28th of March, 1862, the claimants sold to the said “Confederate States” 2,480 pounds of saltpetre, and received payment therefor'from a rebel officer, at Richmond, Virginia, on the 27th of June, 1862; and on the 30th of November, 1862, they sold to the said “ Confederate States” 4,209 pounds of nitre, and in the bill of the same, which they receipted, it was expressed that the said nitre was “for manufacture of gunpowder.” The amount of said bill was paid at Larkinsville, Jackson County, Alabama, on the 24th of December, 1862, by the rebel “ super- . intendent of nitre and mining district, No. 9. f and the claimants hired to said “Confederate States” wagons to transport the nitre from Santa Cave to Rome, Georgia.
Aside from these facts, we should be inclined to consider that the claimants had, during the rebellion, observed the obligation of neutrality which their alien character imposed on them, and abstained from giving aid or comfort to the rebellion; but in view of those facts we cannot so hold.
They engaged their capital, skill, and labor in manufacturing and selling to the rebel confederacy saltpetre — an article of X>rime necessity to that' usurping authority, and of which it *405 stood in constant and urgent need. That this was done by them voluntarily there is no evidence to contradict. That it was done deliberately is implied in their purchase of a lease of the cave. That it was done with an eye to the consequences if the Union troops came upon, them, is evidenced by their stopping the work and leaving the cave when those troops came into the adjoining' county, and resuming if when they left there. That they knew the use that the rebels would make of the article is attested by their own signature to a bill, specifying that it was for use in the manufacture of gunpowder. All the circumstances show the act to have been voluntary, deliberate, and intelligent.
. In The Beterhoff,, (5 Wallace, 28,) the Supreme Court gives a classification of goods contraband and not contraband, which is best supported by American and English decisions, as follows:
“ Of these classes the first consists of articles manufactured, and primarily and ordinarily used for military purposes in time of war ; the second, of articles which may be and are used for purposes of war or peace, according to circumstances ; and the third, of articles exclusively used for peaceful purposes. Merchandise of the. first class, destined to a belligerent country or places occupied by the army or navy of a belligerent, is always contraband ; merchandise of the second class is contraband only when actually destined to the military or naval use of a belligerent; while merchandise of the third class is not contraband at all, though liable to seizure and condemnation or violation of blockade or siege.”
That saltpetre is, under the second, if not the first, of those classifications, contraband of war, cannot be questioned. That the claimants not only sold, but voluntarily manufactured and sold this article to the rebel authorities, expressly to be used “ for manufacture of gunpowder,” and that they knew that the gunpowder, Avhen made, was to be used in slaying men in the armies of the Union, cannot for a moment be doubted.
If we hold, as we did in Bates’s Case, (4 C. Ols. K., p. 569,) that voluntary connection, during the rebellion, with the violation of the blockade laws of the United States, debarred a claimant from recovering in this court the proceeds of captured cotton, much more should we apply that rule to him who voluntarily engaged in producing and selling to the rebels an article con *406 traband of war which, tended directly to support their military operations. The act was one of direct aid and comfort to them, and is a “flat bar” to this suit.
The petition of the claimants if dismissed.